[Civ. No. 32543.    Second Dist., Div. One.    Dec. 27, 1968.]

STILLMAN POND et al., Plaintiffs and Respondents, v. JOHN H. SCHWARTZ, Defendant and Appellant.

———

*Assigned by the Chairman of the Judicial Council.

Boyko & Simmons and James A. Schmiesing for Defendant and Appellant.

John E. Glover for Plaintiffs and Respondents.

LILLIE, J.—Plaintiffs sued for damages for breach of contract; defendant answered and counterclaimed and filed his cross-complaint for declaratory relief, foreclosure of lien and deficiency judgment. Judgment was rendered for plaintiffs on their complaint in the sum of $11,700.18 (ascertained by an accounting on the Carnation lease) and interest of 7 percent thereon from April 1, 1967, and for defendant on his cross-complaint declaring plaintiffs to be the equitable owners of an undivided one-half interest in 5½ acres of land, awarding defendant an equitable first lien on plaintiffs' interest, adjudging the lien to be a charge in the amount of $32,566 plus interest at 7 percent per annum from April 1, 1967, against said ownership and interest of plaintiffs, foreclosing the lien and ordering the sale of plaintiffs' interest in the

property under a writ of enforcement. Defendant appeals from the judgment.

The record reflects numerous financial dealings between plaintiff Pond and defendant and his brother over a substantial period of time, but the only trasaction placed in issue on this appeal is that relating to the Tsuruda contract.

Plaintiff was the owner of approximately 5½ acres of land located in Lancaster, hereinafter referred to as the Carnation property, a portion of which he leased to Carnation Milk Company in September 1956. In 1957 defendant purchased the Carnation property from plaintiffs for $15,000 subject to a first deed of trust of $40,000 due in three years; plaintiffs conveyed the entire 5½ acres to defendant.

On August 6, 1957, plaintiff Pond, under Agreement For Sale of Real Estate agreed to sell certain land (not the land in suit) to Yo Tsuruda and Fuma Tsuruda for $12,000, $2,400 upon execution and delivery of the agreement and $111 on the 6th day of every month until paid in full with interest at 7 percent per annum. Thereafter on May 15, 1958, plaintiff Pond assigned the Tsuruda agreement to defendant by written Assignment of Contract whereby, for $3,000 consideration paid by defendant to plaintiff, plaintiff assigned to defendant the Tsuruda Agreement for Sale of Real Estate retaining an option to repurchase the Tsuruda agreement from defendant within one year for $4,500. The option was never exercised. After paying $444 in monthly payments to defendant, the Tsurudas learned that plaintiff Pond was unable to deliver title and made no further payments to defendant. The last payment made by the Tsurudas was through October 10, 1958, leaving a balance under the agreement in the sum of $8,859.41.

Three years after the sale of the Carnation property to defendant and on June 23, 1960, plaintiffs and defendant entered into the written agreement herein sued upon. Under this agreement defendant was to pay off the existing trust deed and all back taxes; defendant agreed to deed to plaintiffs an undivided one-half interest in the Carnation property and plaintiffs agreed to execute to defendant a note and deed of trust on their undivided one-half interest for $30,000 payable in five years at 4½ percent per annum, however, defendant agreed not to record the original deed and original deed of trust until such time as plaintiffs could prove that there are no liens or unsatisfied judgments or other encumbrances against them; plaintiff assigned to defendant the Car-

nation Milk lease and the monthly rental income thereon out of which defendant agreed to pay to himself the 4½ percent annual interest on the $30,000 payable to him and the total real estate taxes as they become due on the property, the balance to be divided equally between defendant and plaintiff; and ''Stillman Pond and Vivian L. Pond further agree that said one-half of the property deeded to Stillman Pond and wife Vivian L. Pond is to be deemed security for any losses suffered by John N. Schwartz due to the Tsuruda and both Medley contracts and also for the payments in full of a certain $7,500.00 note recently signed by Stillman Pond and wife Vivian L. Pond and by Antelco, Inc.''

The evidence shows that defendant collected the Carnation lease rentals from June 1960 but neither paid any part thereof to plaintiffs nor made to them an accounting of the proceeds; on May 10, 1965, defendant executed a new 10-year lease with Carnation Milk Company; defendant did not deed to plaintiffs an undivided one-half interest in the Carnation property and plaintiffs did not execute to defendant their note and deed of trust nor did plaintiffs prove there were no unsatisfied judgments or liens against them; and plaintiff Pond could not deliver title to the Tsurudas on the Agreement For Sale of Real Estate, the Tsurudas rescinded, suit was brought and the same was settled.

The trial court found that the parties executed the agreement of June 23, 1960; that plaintiffs are entitled to an accounting by defendant specifying receipts with which defendant is chargeable and credits for disbursement to which defendant is entitled leaving an amount due plaintiffs in the sum of $13,842.38; that there are certain off-sets or credits (assessments and insurance premiums) owing to defendant by plaintiffs in the sum of $2,142.20; that otherwise there is no breach of the June 23, 1960, agreement by either defendant or plaintiffs (while defendant did not deed to plaintiffs an undivided one-half interest in the Carnation property and plaintiffs failed to execute a note and deed of trust thereon, the record shows that plaintiffs did not satisfy the condition of proving that there were no liens or unsatisfied judgments or other encumbrances against them; and while defendant executed a new lease with the Carnation Milk Company, the evidence shows he was the owner of the property and had the right to do so) ; that plaintiffs are the equitable owners of an undivided one-half interest in the property; ''that defendant suffered a loss in connection with the Tsuruda contract trans-

ferred between the parties amounting to $2,556.00 and further finds that this is the only loss the defendant suffered in his dealings with the plaintiffs in connection with the matter set forth in the concluding paragraph of the Agreement dated June 23, 1960''; that defendant has an equitable lien upon plaintiffs' undivided one-half interest in the Carnation property; and plaintiffs' interest therein is charged with and subject to said equitable lien in favor of defendant ''in an amount equal to the purchase price of said undivided one-half interest as fixed by said agreement of June 23, 1960, which purchase price [$2,556.00] is made up of and consists of the following:

''1. $30,000.00, the amount of the note secured by deed of trust on plaintiffs' interest in said property, which trust deed was to be executed by plaintiffs and delivered to defendant.

''2. $2,556.00, the amount of loss to defendant resulting from the Tsuruda contract as heretofore found by the court, and the court finds as provided by said contract that the payment of such loss was secured by the equitable ownership and interest of plaintiffs in said property.''

█ There is no merit to appellant's claim that the trial judge erred in finding that the loss suffered by him on the Tsuruda contract was the difference between the consideration paid by him ($3,000) to plaintiff and the amount paid by the Tsurudas ($444) to him after the assignment. Predicated on the theory (1) that ''this [Agreement of June 23, 1960] is a direct contract for the payment of money'' thus the measure of damages is that set up in section 3302, Civil Code,[1] or (2) that plaintiffs are sureties of the obligation of the Tsurudas, appellant argues that the correct measure of damages is the amount due by the terms of the Tsuruda-Pond agreement—the principal balance ($8,859.51) owed by the Tsurudas on the property at the time of their last payment (October 10, 1958) plus accrued interest of 7 percent annually ($4,958.88). Equally without substance is respondent's argument in support of the trial court's finding on damages based on section 3343, Civil Code[2]—''the measure of damages to be applied in fraud cases.'' (*Bagdasarian* v. *Gragnon*, 31 Cal.2d 744, 759-

---

[1]Section 3302, Civil Code: ''The detriment caused by the breach of an obligation to pay money only, is deemed to be the amount due by the terms of the obligation, with interest thereon.''

[2]Section 3343, Civil Code: ''One defrauded in the purchase, sale or exchange of property is entitled to recover the difference between the actual value of that with which the defrauded person parted and the actual value of that which he received, together with any additional damage arising from the particular transaction. . . .''

763 [192 P.2d 935].) It should be noted that herein no accusation of fraud was made, no issue of fraud was raised in the cause below, no effort was made to prove fraud and none was established in the evidence[3] and the trial court made no finding that anyone was defrauded.

As to the applicability of section 3302, urged by appellant, it is clear from the language of the agreement of June 23, 1960, which controls the rights and liabilities of parties, that there is here no "obligation to pay money." Plaintiffs did not therein agree to pay defendant's loss suffered on the Tsuruda contract; they did agree that the one-half of the property deeded to them "is to be deemed security for *any* losses suffered by [defendant] due to the Tsuruda . . . contract. . . ." (Italics added.) Thus, while the plaintiffs contemplated some loss running to defendant on the Tsuruda and other named transactions, the most they agreed upon was that *any* loss suffered by defendant thereon would constitute a lien against their one-half interest in the Carnation property. Just as there is no "direct contract for the payment of money," there is no promise by plaintiffs to become liable for performance of the obligation of the Tsurudas, thus, the surety sections relied upon by appellant do not apply.

In the agreement of June 23, 1960, plaintiffs did not agree that defendant sustained a loss on the Tsuruda contract, nor is the loss defined or the amount fixed; the agreement simply provides that for any such loss plaintiffs' one-half interest in the Carnation property is deemed to be security. Whether

---

[3]The following is the only testimony bearing on plaintiffs' inability to deliver title to the Tsurudas. Asked why the Tsurudas stopped making payments on the contract, defendant testified: "Because I was told that they decided as long as it couldn't be proven that the land was available and could be deeded to them, that they decided they'd be foolish to continue making payments on a bogus contract."

Later the court asked defendant: "What's the status of the title of the property at this time? Do you have it?

"THE WITNESS [defendant]: Which property?

"THE COURT: The so-called Tsuruda.

"THE WITNESS [defendant]: The Tsuruda property, as I say, it was a bogus contract because Mr. Pond never could deliver. He didn't have title himself."

Later on direct examination defendant was asked: "Q So that all you did was buy an account receivable, in effect?

"A A contract, yes, in the form of a receivable, yes.

"Q And at the time you purchased these, did you make any investigation to determine whether Mr. Pond in fact owned the property that he had purported to sell?

"A No.

"Q Did Mr. Pond ever tell you that he owned the property?

"A Yes."

defendant in fact suffered loss on the Tsuruda transaction and the amount thereof, are matters for proof; and the evidence is sufficient to support the trial court's finding that defendant sustained a loss due to the Tsuruda contract in the amount of $2,556—his actual out-of-pocket loss. The court further found that this is the only loss defendant suffered in his dealings with the plaintiffs in connection with those transactions set forth in the concluding paragraph of the Agreement of June 23, 1960. As to the amount of loss, the proof supports no more than the difference between the amount he received from the Tsurudas and the amount he paid plaintiff Pond for the contract, and no agreement by plaintiffs to pay anything in excess thereof;[4] certainly nothing establishes the damage defendant here seeks. While the record shows that the Tsurudas stopped making payments because title could not be

---

[4] "Q [By Mr. Schmiesing (attorney for defendant)]: Did Mr. Pond ever promise to pay to you the amounts of money due from the Tsurudas under this contract?

"A [by defendant]: Promise was made when he could afford to he would pay.

"Q Is this the same contract that's referred to in the 1960 agreement?

"A Yes.

"THE COURT: Let me interject there. Did you refund the money to the Tsurudas?

"THE WITNESS: No.

"THE COURT: Did anyone? What did Mr. Pond agree to repay you, what you had in it, the $3,000?

"THE WITNESS: Well, as I say, just whatever would be legal. He agreed to pay me—the fact he didn't exercise the option—agreed to pay what was coming to me. So it could have been settled at 3,000 or could have been settled for whatever the decision would have been.

"THE COURT: All right.

"THE WITNESS: As long as there was no actually [sic] meeting of the minds.

"THE COURT: But the Tsurudas just defaulted. They didn't bring any lawsuit over it.

"THE WITNESS: They brought no lawsuit.

". . . . . . . . . . . . .

"MR. GLOVER: Your Honor may I clear up something? You are talking about the Tsuruda contract.

"THE COURT: Yes.

"MR. GLOVER: There were lawsuits brought on both the Tsuruda and Medley.

"THE COURT: He did.

"THE WITNESS [defendant]: I wasn't aware of it.

"THE COURT: Maybe it is all collateral.

"Was a settlement made with the Tsurudas to pay them back what they put in the property?

"MR. GLOVER: Both cases were settled. I can say that because I looked it up myself.

". . . . [By Mr. Schmiesing]: Now, has Mr. Pond ever paid you anything with respect to the Tsuruda contract?

"A No."

Plaintiff Pond was asked: "Then later on there was trouble on the

delivered and "they rescinded," that a lawsuit arose out of the Tsuruda contract and Pond settled with them, that defendant did not refund the $444 to the Tsurudas and that he was unaware of any lawsuit, it does not reflect the parties to the lawsuit or the amount of the settlement.

Also without merit is appellant's additional claim that he is entitled to interest from the date of the last payment by the Tsurudas, October 10, 1958, to the date of judgment, March 31, 1967, because the Pond-Tsuruda contract provides for 7 percent interest, and "interest reserved in a contract is part of the contract or debt and is recoverable as a matter of right." The agreement of June 23, 1960, between plaintiffs and defendant as it relates to the Tsuruda contract creates no personal obligation on the part of plaintiffs to pay anything and no interest is therein "reserved." In the alternative, says appellant, interest should have been awarded because in the absence of an agreement to pay interest, the law nevertheless awards interest on money from the time it becomes due and payable. Again resort to the June 23, 1960, agreement reveals that inasmuch as there is no obligation of plaintiffs to pay any loss suffered by defendant on the Tsuruda contract, only a provision that their interest in the property shall be security for such loss, there not only is not but could not be any time specified when the loss "becomes due and payable." The remedy afforded defendant to enforce the collection of the $30,000 trust deed and any losses sustained on the several transactions, including the Tsuruda contract, was foreclosure of the lien provided for in the Agreement of June 23, 1960; accordingly, the trial court gave him relief by awarding him an equitable lien on plaintiffs' one-half interest, adjudging the lien to be a charge against said interest in the amount of $32,556, which includes the Tsuruda loss, foreclosing the lien and ordering the sale of plaintiffs' interest in the property under a writ of enforcement. Thus, the trial court properly included the amount of loss fixed by him ($2,556) in the lien awarded to defendant on his cross-complaint and withheld an award of interest.

On the theory that the provision with respect to the Tsuruda loss was separate from that setting up the purchase

contracts [Tsuruda and Medley]. Suits arose out of them. And you settled with the Tsurudas. . . .

"A Correct."

Later the parties entered into the following stipulation that "title could not be delivered and they rescinded" on the Tsuruda contract.

price and the note and deed of trust that were to be executed as security for the purchase price, appellant contends that he is entitled to a personal judgment against plaintiffs on the Tsuruda contract and a deficiency judgment should the proceeds of the foreclosure sale be insufficient to pay the purchase price, interest, costs and the Tsuruda loss. He concedes that he is not entitled to a deficiency judgment on the $30,000.

Nothing in the agreement of June 23, 1960, or the record supports a personal judgment against plaintiffs or a deficiency judgment on the Tsuruda contract. The trial court specifically found that defendant has an equitable lien upon plaintiffs'.undivided one-half interest in the Carnation property and charged that interest with the lien ''in an amount equal to the purchase price of said undivided one-half interest as fixed by said agreement of June 23, 1960, which purchase price is made up of and consists'' of $30,000, the amount of the note secured by deed of trust on plaintiffs' interest in the property, and $2,556, the amount of loss to defendant resulting from the Tsuruda contract.

Thus, while the provision relative to any loss on the Tsuruda transaction is physically in a separate paragraph, the trial court's interpretation of the agreement of June 23, 1960, that nevertheless it was intended to be and is a part of the purchase price is a reasonable one. The security transaction related therein simply amounts to a purchase money trust deed given to secure payment of the purchase price— $32,556—for plaintiffs' one-half interest in the Carnation property. Under such construction which we think to be proper, section 580b, Code of Civil Procedure,[5] bars any deficiency judgment. (See *Roseleaf Corp.* v. *Chierighino,* 59 Cal. 2d 35, 41-44 [27 Cal.Rptr. 873, 378 P.2d 97].)

The judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.

---

[5]Section 580b, Code of Civil Procedure: ''No deficiency judgment shall lie in any event after any sale of real property for failure of the purchaser to complete his contract of sale, or under a deed of trust, or mortgage, given to the vendor to secure payment of the balance of the purchase price of real property. . . .''